UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

MARCUS AYUSO,

                      Petitioner,

      - against -

THOMAS LAVALLEY,

                      Respondent.

-------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

12 Civ. 0932 (BMC)

**COGAN**, District Judge.

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking to challenge his state court conviction for second-degree burglary (N.Y. Penal L. §140.25[2]), petit larceny (N.Y. Penal L. §155.25), and fifth-degree possession of stolen property (N.Y. Penal L. §165.40). Based on his criminal history, petitioner was sentenced as a mandatory persistent violent felony offender to concurrent terms of sixteen years to life for the burglary and one year each for the petit larceny and stolen property counts.

The facts can be stated simply. Petitioner was caught stealing tools from a residence that was partially under construction. He attempted to pass himself off as a construction worker, but when he attempted to leave with the tools, the owner of the residence confronted him and petitioner took flight. After a fight and subsequent chase, the owner and a neighbor flagged down a police car and the police arrested petitioner.

The petition is skeletal; it does not state any grounds for relief and there is no brief in support. For the purpose of this decision, this Court will liberally construe the petition as raising each of the points of error that were exhausted on direct appeal.

Petitioner raised two points of error on direct appeal: (1) when petitioner requested assignment of new counsel just before jury selection, the trial court improperly denied his request without making a proper inquiry, thus depriving petitioner of his Sixth Amendment right to counsel; and (2) the trial court, in sentencing petitioner as a mandatory persistent felon, violated his Fifth Amendment rights to due process and a jury trial by relying on facts not found by the jury. Additional facts will be set forth below as relevant to each of petitioner's points. Neither ground appears to have merit.

## I.  Appointment of Replacement Counsel

On the morning of trial, petitioner's trial counsel – his third appointed lawyer – advised the trial court that he was ready for trial but that petitioner had an application. The trial court inquired of petitioner what the application was and petitioner requested appointment of new counsel. The grounds for his application were that his current counsel, Miret, was "trained" by his prior counsel, Gibbons, and that Miret was still in contact with Gibbons. Because of this, petitioner stated, "I feel there is a conflict of interest between me and [Miret]." Petitioner also complained that there was a "lack of communication" between petitioner and Miret because petitioner had not received all of his files. Miret advised the trial court that he had obtained the entire file from Gibbons and that Gibbons had advised him that he had "turned over everything he had" to petitioner. Miret then assured petitioner on the record that he would again make copies of everything and turn it over to petitioner.

The trial court then engaged in a dialogue with petitioner to determine what the communication difficulties were. The court asked petitioner, "What's your lack of communication?"; "Why aren't you talking to [Miret]?"; and "What is it that you are trying to get?" Petitioner simply reasserted that there was a conflict of interest and stated, "I am not communicating with him." There was a brief mention of a failure to secure witnesses but Miret responded that he had issued subpoenas and was attempting to secure the witnesses' presence. The court went on to address evidentiary issues with petitioner's counsel but repeatedly came back to respond to petitioner's adamant refusal to proceed to trial without appointment of a fourth attorney.

The court advised petitioner that, having had three different lawyers and having now sought a fourth on the eve of trial, his only choices were to proceed with his current counsel; hire his own counsel; or represent himself. Petitioner then stated, "I don't care what you say. I don't want him. You can't force me." He repeated words to that effect a number of times. At that point, petitioner's counsel asked to be relieved because he "could see a potentiality of a grievance being filed here." The court denied the request, stating:

> The bottom line is neither the courts nor the bar can be bullied and intimidated by threats when somebody who has decided he has had three lawyers and he is not happy with them.
> Your client is not inexperienced with the system. It appears based on his record that he is a mandatory persistent violent felony offender and it might very well be a tactic to avoid going to trial by always complaining about the lawyers.

The Appellate Division affirmed the trial court's ruling on the merits. It held that the trial court "conducted a sufficient inquiry regarding the basis of defendant's request, and no further inquiry was required, as the defendant's assertions did not suggest the serious possibility of a genuine conflict of interest or other impediment to the defendant's representation by assigned

3

counsel." People v. Ayuso, 80 A.D.3d 708, 709, 915 N.Y.S.2d 149 (2d Dep't), leave to app. den., 16 N.Y.3d 856, 923 N.Y.S.2d 418 (2011) (table).

Because the Appellate Division affirmed the trial court's ruling on the merits, its decision is entitled to deferential review under 28 U.S.C. § 2254(d). This statute provides that federal habeas corpus relief is only available if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has recently clarified that this standard of review is extremely narrow, intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S. Ct. 2781 (1979) (Stevens, J., concurring)).

State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, — U.S. —, 131 S. Ct. 1305 (2011) (internal quotation marks and citation omitted), and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility of disagreement" among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law.[1]

---

[1] Harrington and Cavazos v. Smith, — U.S. —, 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far

4

Under this standard, it does not seem that the Appellate Division unreasonably applied Supreme Court precedent in finding that petitioner's rights had not been violated. According to United States v. Cronic, 466 U.S. 648, 657 n.21, 104 S. Ct. 2039 (1984), the inquiry under the Sixth Amendment "focuses on the adversarial process, not on the accused's relationship with his lawyer as such." The Sixth Amendment's right to choose one's own counsel is thus circumscribed for an indigent defendant, who has the right to a lawyer without a serious conflict of interest but who does not have the right to "insist on representation by an attorney he cannot afford[.]" Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692 (1988). It is well settled that "[a]lthough an indigent is entitled to appointed counsel, he is not guaranteed counsel of his choice," because "[a]llowing repeated substitution of counsel would result in excessive delay and would hinder the speedy and efficient disposition of cases." Pizarro v. Bartlett, 776 F. Supp. 815, 819 (S.D.N.Y. 1991).

Although only a contravention of Supreme Court authority would be material in this habeas corpus proceeding, it is noteworthy that the Second Circuit too has limited a defendant's right to reject assigned counsel on the eve of trial. "It is settled in this Circuit that '[o]nce trial has begun a defendant does not have the unbridled right to reject assigned counsel and demand another.'" McKee v. Harris, 649 F. 2d 927, 931 (2d Cir. 1981) (quoting United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972)). "An accused's right to select his own counsel . . . cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." United States v. Bentvena, 319 F.2d 916, 936

---

off the mark as to suggest judicial incompetence." The Harrington/Cavazos standard may not quite require "judicial incompetence," but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," it certainly comes close. The Second Circuit has already noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20 (2d Cir.) (granting motion to vacate its earlier decision granting habeas relief upon consideration of Cavazos), vacating, 649 F.3d 132 (2d Cir. 2011).

(2d Cir. 1963). "A defendant with assigned counsel cannot decide for no good cause on the eve or in the middle of trial that he will have another attorney represent him." Calabro, 467 F.2d at 986. To warrant reassignment of counsel on the eve of trial, "[t]he defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." Id. Only if a trial court receives a "seemingly substantial" complaint about counsel is it required to inquire the reasons for the dissatisfaction. McKee, 649 F.2d at 932.

Petitioner's request for a fourth appointed lawyer on the eve of trial was a very transparent tactical effort to delay the trial. Even though he voiced no substantial complaint, the trial court did in fact conduct an inquiry to determine if there was anything to petitioner's request. The trial court asked a number of questions and could get nothing meaningful out of petitioner, just a conclusory assertion that petitioner wanted a new lawyer.

On appeal, petitioner emphasized that his trial lawyer's fear that petitioner might file a grievance against him should have resulted in further inquiry, such as asking petitioner whether he did in fact intend to file a grievance against Miret. The argument seems to have been that the trial lawyer's fear of a grievance, if substantial enough, might have rendered him ineffective – although petitioner alleged no actual failure of performance. I agree with the trial court and the Appellate Division that there was no point in further inquiry. Petitioner likely would have said, "yes, I intend to file a grievance," realizing the opportunity to come up with some excuse to delay the trial. But the trial court was right that it would set a dangerous precedent to allow defendants to manipulate the trial process by threatening to file a grievance against their assigned counsel on the eve of trial when there is no basis for a grievance other than a desire to delay the trial.

The Appellate Division recognized that an indigent defendant generally has a Sixth Amendment right to a lawyer who does not have a serious conflict of interest, see Wheat, 486 U.S. at 160, but determined that the trial court had "conducted a sufficient inquiry" to determine whether a conflict existed and had reasonably determined that "defendant's assertions did not suggest the serious possibility of a genuine conflict of interest." This reasoning does not appear to be contrary to, or an unreasonable application of, any Supreme Court precedent.

## II. Fact-finding by the Sentencing Judge

When petitioner appeared for sentencing, the prosecutor filed a predicate felony statement alleging that petitioner had two prior second-degree burglary convictions. Petitioner admitted the convictions, and the sentencing court found that they had in fact occurred. Under N.Y. Penal L. §70.08(1), this qualified him as a mandatory persistent violent felon and enhanced his sentence.

On appeal, petitioner contended that the sentencing court's finding that he was a mandatory persistent violent felon (despite the fact that he admitted it) violated his right to a jury trial. He relied exclusively on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and the Second Circuit's decision in Besser v. Walsh, 601 F.3d 163 (2d Cir.), vacated sub nom., Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010) (en banc), which had precluded judicial fact-finding with regard to a different statute – New York's discretionary persistent felony offender statute, N.Y. Penal L. §70.10 – finding that statute unconstitutional. The Appellate Division rejected his claim on the merits, and it is thus subject to the same deferential standard of review described above.

Petitioner's challenge here appears to fail on two grounds. First, Apprendi expressly allows for judicial determination of the existence of prior convictions by the sentencing court,

7

and does not require a jury. <u>Apprendi</u>, 530 U.S. at 490, 120 S. Ct. at 2362-63. Second, as noted above, the Second Circuit recognized this in <u>Portalatin</u>, and thus overruled <u>Besser</u>.

## **CONCLUSION**

Because petitioner did not brief his claims, he may make any submission he deems appropriate within 20 days from issuance of this decision, and the Court will consider any arguments raised in such submission. If any of petitioner's arguments appear meritorious, the Court will then direct a further submission from respondent. No submission is required from respondent at this time. The Clerk is directed to refrain from entering judgment pending further Order. A certificate of appealability shall not issue. <u>See</u> 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
April 9, 2012